# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEUDY JORGE BENJAMIN CORDERO,<br><br>Petitioner,<br><br>v.<br><br>U.S. ATTORNEY GENERAL/ICE, et al.,<br><br>Respondents. | Case No. 1:26-cv-2500-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS, GRANT PETITIONER'S MOTION FOR IMMEDIATE RELEASE, DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER, AND TERMINATE RESPONDENTS' MOTION TO DISMISS AS MOOT<br><br>(ECF Nos. 9, 10, 15) |

Petitioner is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the first amended petition for writ of habeas corpus be granted and Respondents be directed to immediately release Petitioner.

**I.**

**BACKGROUND**

Petitioner is a citizen of Cuba who came to the United States in June 2019, was detained by border authorities shortly after entry, passed a credible fear interview, and was released on a $1500 bond. Petitioner applied for asylum and was granted work authorization and a social security number. Petitioner was arrested for several non-violent offenses, all misdemeanors, but none of the offenses were prosecuted. He has no criminal convictions. (ECF No. 15 at 5.[1])

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

Petitioner was re-detained by Respondents on February 17, 2025, after a misdemeanor arrest that resulted in no conviction. On April 2, 2026, an immigration judge ("IJ") denied Petitioner's asylum application and ordered Petitioner removed to Cuba. No appeal was filed. (ECF No. 15 at 5.) After Petitioner was ordered removed, U.S. Immigration and Customs Enforcement ("ICE") officers began visiting Petitioner, telling him he had to go to Mexico. Petitioner is afraid to go to Mexico and has expressed that to the officers. Petitioner has not been provided an interview or any opportunity to present evidence as to his fear of going to Mexico.

On April 2, 2026, Petitioner, proceeding *pro se*, filed a petition for writ of habeas corpus. (ECF No. 1.) On April 17, 2026, Respondents filed a response. (ECF No. 7.) On July 10, 2026, Respondents filed a motion to dismiss. (ECF No. 9.) On August 3, 2026, Petitioner filed a motion for immediate release, which the Court construed as a motion to amend and granted. (ECF Nos. 10, 13.)

On August 26, 2026, the Court appointed counsel for Petitioner. (ECF No. 13.) On September 25, 2026, Petitioner filed a first amended petition ("FAP"). (ECF No. 15.) On October 20, 2026, Respondents filed a response to the FAP, and Petitioner filed a reply on November 3, 2026. (ECF Nos. 18, 19.)

## II.

## DISCUSSION

### A. Zadvydas

The FAP asserts that Petitioner's continued detention violates the Immigration and Nationality Act, due process, and Zadvydas v. Davis, 533 U.S. 678 (2001), because there is no indication that Petitioner's removal will happen in the foreseeable future. (ECF No. 15 at 8–12.)

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

\\\

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.' § 1231(a)(1)(A). The statute provides that the Government 'shall' detain noncitizens during the statutory removal period. § 1231(a)(2)."[2] Id. at 578 (some internal quotation marks omitted).

In Zadvydas, the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

---

[2] "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (citing 8 U.S.C. § 1231(a)(1)(B)).

"In *Zadvydas,* the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period." Jennings v. Rodriguez, 583 U.S. 281, 298–99 (2018) (internal citations omitted). Here, the removal period began on May 2, 2026, when the time to appeal expired and the order of removal became administratively final, and the six-month presumptively reasonable period has just ended. See 8 U.S.C. § 1231(a)(1)(B)(i) ("The removal period begins on the . . . date the order of removal becomes administratively final."); 8 C.F.R. § 1241.1(c) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final . . . Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time[.]").

"Courts routinely find that noncitizens" who "cannot be removed to" the country listed in their removal orders and do "not have citizenship or significant ties to any other count[r]y, and [where] there is no evidence that any other country is willing to accept [a] third country removal under 8 U.S.C. § 1231(b)(2)(E)," "have met their initial burden under *Zadvydas*." Elshourbagy v. Bondi, 817 F. Supp. 3d 1102, 1109 (W.D. Wash. 2025) (collecting cases). "Courts around the country, including this district, have [recognized] Cuba's unwillingness to repatriate U.S. deportees." Cabrera v. Senior Warden, Adelanto Det. Facility, No. 5:26-CV-03073-HDV-RAO, 2026 WL 2249486, at *3 (C.D. Cal. Aug. 3, 2026). Additionally, "[c]ourts have noted that that the standing agreement between the United States and Mexico appears premised on Petitioner's compliance and have therefore held removal based on the standing agreement between the United States and Mexico is not reasonably foreseeable when the noncitizen does not consent to the removal." Ramirez Outerino v. Warden, Mesa Verde ICE Processing Ctr., No. 1:26-cv-05326-DJC-JDP, 2026 WL 2327873, at *2 n.1 (E.D. Cal. Aug. 11, 2026) (collecting cases).

Here, the FAP alleges that "Respondents are unable to remove Petitioner to Cuba," noting "[i]t is evident that ICE has not obtained travel documents from Cuba since they have now had almost 6 months to do so and are trying to remove him to Mexico." (ECF No. 15 at 6.) Respondents have provided no evidence to rebut Petitioner's showing.

Based on the foregoing and under Zadvydas, the Court finds Petitioner's continued detention is unreasonable and no longer authorized by statute. See Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur."). Therefore, Petitioner should be released on appropriate conditions of supervision. See Zadvydas, 533 U.S. at 699–700; 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); 8 C.F.R. § 241.5 (conditions for release after removal period).

**B. Third Country Removal**

The FAP also challenges Respondents' third country removal policy on various grounds. (ECF No. 15 at 18–20.) Respondents do not address these claims whatsoever in their response.

"In recent months, the Government's policy regarding third country removals has shifted substantially. In particular, policy memoranda issued on March 30 [the Noem Memo] and July 9 [the Lyons memo] by DHS have become frequently discussed in similar cases[.]" Escobar v. Chestnut, No. 1:25-cv-01801-DJC-EFB, 2025 WL 3687639, at *2 (E.D. Cal. Dec. 19, 2025).

> The Noem Memo provides two different tracks for removals of noncitizens to third countries, determined primarily by whether the third country in question "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." (Noem Memo at 10). In instances in which the United States "has received such assurances," which the Department of State "believes to be credible," then "the alien may be removed *without the need for further procedures.*" (*Id.* at 10-11) (emphasis added).
>
> In instances where the United States has *not* received such assurances – or has received assurances but "does not believe them to be credible" – ICE is required to follow a separate procedure. (*Id.* at 11). In those cases, ICE will "inform the alien of removal to that country" but "will not affirmatively ask whether the alien is afraid of being removed to that country." (*Id.*). Only where a noncitizen "affirmatively states a fear of removal" will they be referred to "screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." (*Id.*). The Noem Memo provides further guidance as to those noncitizens who *do* affirmatively state a fear of removal to the third country. (*Id.*). It states that the noncitizen will generally be screened within twenty-four hours, after which

> USCIS "will determine whether the alien would be more likely than not to be persecuted on a statutorily protected ground or tortured in the country of removal." Where a noncitizen does not meet this standard, they "will be removed." (*Id.*). If the noncitizen meets this standard, then the matter will be referred to Immigration Court. (*Id.*). Where the individual in question "was previously in proceedings before the Immigration Court," the immigration officer will inform ICE, which "may file a motion to reopen with the Immigration Court or the Board of Immigration Appeals, as appropriate, for further proceedings" to determine eligibility for protection under INA § 241(b)(3) or CAT for the country of removal. (*Id.*).
>
> The Lyons Memo was issued in light of the Supreme Court's granting the Government's application to stay the district court's nationwide preliminary injunction in *D.V.D. v. Dep't of Homeland Security*, No. 25-10676, 2025 WL 1142968 (D. Mass. Apr. 18, 2025). (Lyons Memo at 13-14). In short, the Lyons Memos provides that "ICE must adhere to [the Noem Memo]." (*Id.* at 13). It reaffirms that, in instances where the United States has received credible diplomatic assurances that "aliens removed from the United States will not be persecuted or tortured," that the noncitizen "may be removed without the need for further procedures." (*Id.*). It reiterates that, "in all other cases," ICE is to notify the noncitizen of the intended country of removal and "will *not* affirmatively ask whether the alien is afraid of being removed to the country of removal." (*Id.*) (emphasis in original). It further provides that ICE "will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal[,]" but that such removal may be executed after six hours in "exigent circumstances[.]" (*Id.*). Where a noncitizen has not affirmatively stated a fear of persecution or torture "within 24 hours," then ICE "may proceed with removal to the country identified on the notice." (*Id.* at 14). The Lyons memo reiterates the procedure detailed in the Noem Memo for those noncitizens that do affirmatively express a fear of removal to the third country in question. (*Id.*).

Esmail v. Noem, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *1–2 (C.D. Cal. Sept. 26, 2025) (footnotes omitted).

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673 (2025) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). "[A] basic tenet of constitutional due process [is] that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999). Thus, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the

United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Andriasian, 180 F.3d at 1041. Accord Ibarra-Perez v. United States, 154 F.4th 989, 995 (9th Cir. 2025) ("DHS must also 'notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported'; otherwise, DHS violates their constitutional right to due process." (quoting Andriasian, 180 F.3d at 1041)).

With respect to what process is due to a noncitizen who seeks to adjudicate a fear-based claim before removal to a third country, the Court finds A.A.M. v. Andrews, 815 F. Supp. 3d 1124 (E.D. Cal. 2025), instructive. In A.A.M., the district court stated:

> Several decisions from the Western District of Washington, however, have more thoroughly analyzed the constitutionally proper process by which a noncitizen may seek to adjudicate his fear-based claim before removal to a third country. In *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash 2019) the court found that the noncitizen's right to due process in relation to his removal to a third country "includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." 409 F. Supp. 3d at 1010 (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). Accordingly, the court in *Aden* found, "[g]iving petitioner an opportunity to file a motion to reopen—a motion which seeks discretionary relief that may be denied without any sort of hearing—is not an adequate substitute for the process that is due in [the third country removal] circumstances." *Id.* Applying that analysis directly to the DHS Third Country Removal Policy, the court in *Nguyen v. Scott*, No. 25-cv-01398, 2025 WL 2419288 at *18 (W.D. Wash. Aug. 21, 2025), found the "requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country," "[t]hat Ninth Circuit precedent is binding on this Court," and "the application of that precedent in *Aden* is persuasive." 2025 WL 2419288 at *18. The court in *Nguyen* therefore issued a preliminary injunction finding that "Petitioner is likely to succeed on his claim that removal to a third country under [the DHS Third Country Removal Policy], without meaningful notice and *reopening of his removal proceedings for a hearing*, would violate due process." *Id.* at 19 (emphasis added).
>
> Further, in applying the holdings from *Aden* and *Nguyen*, the court in *Abubaka v. Bondi*, No. 25-cv-01889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025) determined "on the merits of petitioner's argument that due process does not allow respondents to 'remove or seek to remove him to a third country without notice and meaningful opportunity to respond in compliance with the

> statute and due process in reopened removal proceedings.' " The court in *Abubaka* emphasized that even though DHS's Third Country Removal Policy replaced the policy at issue in *Aden*, the "ruling in *Aden* remains persuasive today and therefore this Court adopts its holdings in *Aden* for the purposes of this ruling ...." *Id.* at 7; *see also Baltodano v. Bondi*, No. 25-cv-1958-RSL, 2025 WL 2987766, at *4 (granting motion for temporary restraining order enjoining Petitioner's removal to third country "without notice and a meaningful opportunity to respond in compliance with statute and due process in reopened removal proceedings").
>
> This court finds these decisions from the Western District of Washington persuasive. Due Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator. This requirement is not satisfied by simply providing Petitioner the time and opportunity to file a discretionary motion to reopen his immigration proceedings.

A.A.M., 815 F. Supp. 3d at 1140–41.

Accordingly, the undersigned recommends enjoining Respondents "from removing Petitioner via a third-country deportation to any country" if "Petitioner does assert a fear-based claim for relief from removal . . . without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process." A.A.M. v. Andrews, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3685159, at *7 (E.D. Cal. Dec. 19, 2025). See Arenado-Borges v. Bondi, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025) (enjoining government "from removing or seeking to remove Petitioner to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings before an Immigration Judge.").[3]

---

[3] In D.V.D. v. Department of Homeland Security, 821 F.Supp.3d 102 (D. Mass. 2026), the United States District Court for the District of Massachusetts issued a declaratory judgment that nation-wide class members have the right to meaningful notice before removal to any third country and the right to a meaningful opportunity to raise a country-specific claim against removal before removal to any third country, in addition to vacating the government's third-country removal policies as embodied in the March 30, 2025 and July 9, 2025 memoranda. The First Circuit affirmed these portions of the judgment. D.V.D. v. U.S. Dep't of Homeland Sec., No. 26-1212, --- F.4th ----, 2026 WL 2797801 (1st Cir. Sept. 18, 2026). The Supreme Court stayed the lower court's order pending further review. Dep't of Homeland Sec. v. D.V.D., No. 26-426, 2026 WL 2917860 (Mem). (Sept. 29, 2026). "Although [Supreme Court] interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases." Trump v. Boyle, 145 S. Ct. 2653, 2654 (2025). However, in granting the stay in D.V.D., the Supreme Court did not provide any reasoning or analysis, and "there is little guidance to be gleaned from such silence." Contreras v. Mullin, No. 26-CV-2316-ABA, 2026 WL 3328754 (D. Md. Nov. 4, 2026). Nor is this a "like case[]." Boyle, 145 S. Ct. at 2654. Petitioner "is asserting his individual claims, based on his individual circumstances, rather than claims for systemic relief." Escobar v. Chestnut, No. 1:25-CV-1801-DJC-EFB, 2026 WL 622121, at *6 (E.D. Cal. Mar. 5, 2026), report and recommendation

## III.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The first amended petition for writ of habeas corpus (ECF No. 15) be GRANTED.
2. Petitioner's motion for immediate release (ECF No. 10) be GRANTED.
3. Respondents be directed to immediately release Petitioner under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5.
4. Respondents be enjoined and restrained from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.
5. Respondents be enjoined and restrained from effectuating Petitioner's third country removal unless Respondents adhere to the following procedures:
    a. Provide Petitioner and his counsel written notice of any third country destination in a language Petitioner can understand;
    b. Provide Petitioner and his counsel a minimum of fourteen (14) days to raise a fear-based claim for protection prior to removal; and
    c. If Petitioner does assert a fear-based claim for relief from removal, Respondents must provide Petitioner a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process.
6. Respondents' motion to dismiss (ECF No. 9) be TERMINATED as moot.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file

---

adopted as modified, 2026 WL 1069797 (E.D. Cal. Apr. 20, 2026). Therefore, the Court finds that the D.V.D. stay does not preclude the Court from granting relief regarding Petitioner's third country removal claims. See A.A.M., 815 F. Supp. 3d at 1135 ("Despite the pending *D.V.D.* class action and the Supreme Court's stay of the injunction issued in that case, numerous courts in the Ninth Circuit have issued injunctive relief requiring identical, or substantially similar, third-country removal procedures as those articulated in the *D.V.D.* preliminary injunction.").

written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 5, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE